**METRO CHEVROLET, INC., Plaintiff,**

v.

**UNION de TRONQUISTAS de P.R., Defendant.**

**Civ. No. 86–1494(PG).**

United States District Court, D. Puerto Rico.

May 8, 1987.

Carlos V.J. Dávila, San Juan, P.R., for plaintiff.

Pedro J. Varela, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Plaintiff, Metro Chevrolet, Inc. (Metro), brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate an arbitration award ordering the reinstatement of two employees who had been discharged for unauthorized absence from work. The discharge was submitted to arbitration pursuant to a collective bargaining agreement between Unión de Tronquistas de Puerto Rico, (the Union) and Metro.

The Union filed a motion for summary judgment requesting that the arbitrator's award be enforced and that the complaint be dismissed. Metro filed an opposition and a cross-motion for summary judgment. The Union filed its opposition to Metro's cross-motion for summary judgment.

The sole issue presented by the cross-motions is whether the arbitrator exceeded her authority in reinstating the discharged employees by improperly modifying Metro's sanction for the employees' conduct.

On March 28, 1984, Metro and the Union executed a three-year collective bargaining

agreement covering the terms and conditions of employment for the auto repair and maintenance workshop employees, which became effective on April 1, 1984, and expired on March 31, 1987. Article X provides in pertinent part that:

The Company shall at all times have the right to suspend or terminate those employees who fail to comply with the obligations of their employment or incur in any of the following faults, if and when the Company action is not in conflict, with the provisions of this Agreement, without it being understood that those that are specified exclude or limit any other legal causes for dismissal or suspension.

Section 18: Leave of Absence without prior authorization of the immediate supervisor.

On December 20, 1985, employees Eddie López and Víctor Oliveras left around lunch time without prior authorization of the immediate supervisor and did not report back to work until Monday, December 23, 1985. That same day, they were summarily terminated by the general manager of Metro. Then López and Oliveras filed a grievance over their discharge. The matter was submitted to arbitration pursuant to Article XI of the collective bargaining agreement. The arbitrator's award, entered August 22, 1986, found that both employees had incurred in unauthorized absence from work in violation of Rule of Conduct number 18. After reaching this conclusion, the arbitrator then considered the issue of whether the discharge was proper as a disciplinary measure. The arbitrator held that the section of Law No. 80, Puerto Rico's unjust dismissal statute, that defines "just cause" for the discharge of an employee, and the guidelines for the interpretation and application of law No. 80, approved by the Puerto Rico Department of Labor and Human Resources, were applicable to the case. The arbitrator further held that although the collective bargaining agreement established the option to elect between suspension and discharge, the election between these measures has to be done within the parameters of "just cause" established in the law and the applicable jurisprudence. Based on the above reasoning, the arbitrator concluded that in the case of López there was no prior disciplinary record that justified his discharge. In the case of Oliveras, the record, which revealed one fault which resulted in a five-day suspension, did not also justify his discharge although it did justify a more severe penalty. The arbitrator then ordered that López be suspended without pay for five working days and that Oliveras be suspended without pay for one month. The arbitrator further ordered the reinstatement of both employees with retroactive pay for the salaries earned after the application of the sactions imposed in the award.

The standard of review of an arbitrator's decision is narrow and limited. The Court of Appeals for the Sixth Circuit recently summarized the nature of the review as follows:

Courts are required to refrain from reviewing the merits of an arbitrator's award due to the strong policy favoring arbitration as a means of resolving labor disputes. An award may, however, be reviewed to determine whether the arbitrator exceeded the limits of his contractual authority.

When an arbitrator is commissioned to interpret the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftman may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrtor is confined to interpretation and application of the collective bargaining agreement, he does not sit to dispense his own brand of industrial justice. He may of course work for guidance from any sources, yet his award is legitimate *only so long as it draws its essence from the collective bargaining agreement.* When the arbitrator's words manifest an infidelity to this obli-

gation, courts have no choise but to refuse enforcement of the award.

*Cement Divisions, Nat. Gyp. v. United Steelworkers*, 793 F.2d 759, 766 (6th Cir. 1986), *quoting, United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Metro claims that the arbitrator's award does not draw its essence from the collective bargaining agreement and instead imposes the arbitrator's own brand of industrial justice. The Union's bare allegations are that the award draws its essence from the collective bargaining agreement since it is supported by principles of contract construction and the law of the shop.

It is well established that the power to construe ambiguous contract provisions lies with the arbitrator, *see, e.g., United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960) (a court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960) (the question of interpretation of the collective bargaining agreement is a question for the arbitrator); *Timken Co. v. United Steelworkers of America*, 492 F.2d 1178, 1180 (6th Cir.1974) ("[i]f a collective bargaining agreement is unclear and ambiguous in its terms, its construction should normally be determined by the arbitrator"), and that an arbitrator may reduce an employer's sanction for proven misconduct when the agreement can be fairly interpreted to give the arbitrator that power, *see, e.g., Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists*, 693 F.2d 35, 37 (6th Cir.1982) (per curiam); (other citations omitted). It is equally well established, however, that an arbitrator cannot ignore plain and unambiguous language in the collective bargaining agreement, *see, e.g., Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155–156 (6th Cir.1982) (per curiam), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274,

75 L.Ed.2d 945 (1983); (other citations omitted), and that an arbitrator may not modify an employer's sanction for employee misconduct when a collective bargaining agreement clearly vests the power to determine appropriate measures with the employer, *see, e.g., International Brotherhood of Firemen and Oilers, Local No. 935–B. v. Nestle Co., Inc.*, 630 F.2d 474, 477 (6th Cir.1980); *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692, 695 (10th Cir.1977); (citations omitted); *Morgan Serv. v. Local 323, Chicago & Central States*, 724 F.2d 1217, 1221–1222 (6th Cir.1984).

Thus, if the agreement is ambiguous, the arbitrator could construe it as allowing her to modify a sanction for unauthorized absence from work; if there is any basis for that construction in the agreement, the Court lacks authority to alter the arbitrator's determination. On the other hand, if the agreement unambiguously allocated the power to discharge for unauthorized absence solely to Metro, then the arbitrator was without power to modify Metro's sanction. *Morgan Serv. v. Local 323, Chicago & Central States*, 724 F.2d at 1222.

The language of the agreement that the "Compay shall have the right to suspend or terminate those employees who ... incur in any of the following faults ... Leave of Absence without prior authorization of the immediate supervisor" is not ambiguous nor does any of its terms require interpretation by the arbitrator or the courts. Nothing in the agreement made the exercise of these rights subject to ultimate approval of an arbitrator or a court.

The conduct of the arbitrator in imposing a "just cause" requirement in reality constituted the addition of terms to a negotiated agreement that was neither unclear or incomplete. The arbitrator inferred the just cause requirement from her own notions of fairness. The arbitrator's application of equitable principles contravened the express terms of the collective bargaining agreement. By imposing a "just cause" requirement upon Metro, the arbitrator ignored the plain terms of the agreement.

Such interpretation exceeded the arbitrator's contractual authority. The arbitrator's award does not draw its essence from the agreement and instead imposes the arbitrator's own brand of industrial justice. *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361; *Cement Divisions, Nat. GYP v. United Steelworkers*, 793 F.2d at 767; *Chauffeurs, Tmsters. & Hlprs. v. Coca-Cola, etc.*, 613 F.2d 716 (8th Cir.1980); *Morgan Serv. v. Local 323, Chicago & Central States, supra.*

WHEREFORE, in view of the above, the Court hereby DENIES the Union's motion for summary judgment, GRANTS Metro's cross-motion for summary judgment, and FURTHER ORDERS that the arbitration award be VACATED.

IT IS SO ORDERED.